CASE 26—ACTION BY NANNIE O'HALORAN V. CITY OF HENDERSON FOR DAMAGES FOR CONTRACTING SMALLPOX FROM CITY PEST-HOUSE.— DEC. 2.

## City of Henderson v. O'Haloran.

APPEAL FROM HENDERSON CIRCUIT COURT.

JUGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  AFFIRMED.—

MUNICIPAL CORPORATIONS—PEST-HOUSE UNLAWFULLY MAINTAINED— INFECTION THEREFROM—PROXIMATE CAUSE—LIABILITY OF CITY— CONTRIBUTORY NEGLIGENCE.

1. Where a pest-house is maintained by a city, within a mile of the city limits, from which a member of a family nearby contracts smallpox, one who becomes a guest of the family for

a day and contracts the disease from the family, without knowledge of the infection at the pest-house or in the family, and which at the time was not known by the family to be smallpox, may recover damages therefor from the city; the location of the pest-house being held to be the proximate cause of the injury.

2. The fact that the visitor discovered that a child with whom she slept during her visit had an eruption which she was told by the mother was chicken-pox, will not render the visitor guilty of contributory negligence so as to defeat her right to a recovery.

JNO. F. LOCKETT AND CLAY & CLAY, FOR APPELLANT.

1. We submit that the plaintiff, being an adult, was guilty of the grossest contributory negligence in sleeping with a child supposed to have chicken-pox, which is itself an eruptive and contagious disease.

2. Even if sleeping with the child in the same bed, infected with what was thought to be chicken-pox, but which was in reality smallpox be not sufficient to bar a recovery, we submit that the city is not liable because of the maxim, "*Causa proxima non remota spectatur.*"

The city had no control over the family of Mrs. Clayton, where appellee was visiting, and did not know that the disease was there, and could not reasonably foresee that she would visit a house and sleep with a child infected with an eruptive disease. None of these things came about or followed as a natural result of the location of the pest-house at that place, but they were all independent acts and but for which appellee would never have had the disease.

Jones' Admr. v. L. & N. R. R. Co., 82 Ky., 615; 1 Thompson on Negligence (2d ed.) sec. 49.

MONTGOMERY MERRITT, FOR APPELLEE.

1. By agreement, this case was held in abatement to await the result of the case of the City of Henderson v. Mrs. P. J. Clayton (22 R., 283-57 S. W., 1) in this court, and the city, being held liable to Mrs. Clayton, it is necessarily liable to Miss O'Haloran, who was on a visit to Mrs. Clayton, not knowing that any one at the city hospital had the smallpox. The city had authorized the Board of Health to send smallpox patients to the city hospital.

2. Proximate Damages.—The rule laid down in 82 Ky., 437, is: "Whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, even though these consequences be brought

about by the intervening agency of others, provided the inter-
vening agents were set in motion by the primary wrong-doer,
or provided those acts causing the damage were the necessary or
legal and natural consequences of the original act.

,Sutherland on Damages, vol. 1, secs. 16 to 40.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

The city of Henderson established a pesthouse within one
mile of the city boundary, by reason of which the disease
of smallpox was communicated to the family of Mrs. Clay-
ton, who lived near by.  It was held that the city was liable
to her in damages.  City of Henderson v. Clayton,
22 R., 283, 57 S. W., 1.  The appellee, Nannie
O'Haloran, was a guest at Mrs. Clayton's house,
and contracted the disease while there.  This is a
suit by her for damages against the city.  The
agreed facts are: About two weeks after the first
case of smallpox had been sent to the pesthouse—a fact un-
known to appellee—she came to Henderson from her home
in the country, and at Mrs. Clayton's invitation went to
her house, and spent the night.  Upon reaching the house,
she found Mrs. Clayton's little boy broken out with some
eruption, and asked his mother what was the matter with
him.  His mother answered that she supposed it was chick-
en pox.  Appellee did not know, and no one else then knew,
the child had smallpox.  She slept in the same bed with
him that night, and returned home the next day.  The same
day a physician was summoned, and pronounced the break-
ing out on the child smallpox.  In due course of time ap-
pellee was stricken with the disease at her home, and was
confined to her room about three weeks.  Her person was
considerably pitted with pockmarks, and she was at ex-
pense for nursing and physicians.  The pesthouse was lo-
cated 300 yards from the boundary line of the city, and 250
yards from Mrs. Clayton's house, where appellee contract-

ed the disease. It is agreed as a fact that the pesthouse was maintained by the city authorities, that Perry Clayton contracted the disease from the pesthouse, and that appellee contracted it from him. On these facts the case was submitted to the court without a jury, and he entered a judgment in favor of the appellee for $500.

It is earnestly maintained that the damages sued for are not the proximate or natural result of the defendant's wrong, and that the plaintiff was herself guilty of contributory negligence. In discussing the rule that the proximate cause is not always the nearest agency in time or space within the rule that the law regards the proximate, and not the remote, cause, in 1 Thomp. Neg., sec. 48, it is said that: "The law does not consider the cause or causes beyond seeking the efficient, predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. But at the same time no act is deemed in law to contribute to an injury unless it is near to that injury in the order of causation. This is what is meant by the expression 'proximate cause.' But the nearest—in point of time or space—may not be the responsible agency at all. Thus, A. negligently drives on a public street, and thereby comes into collision with the carriage of B. This causes the horses of B. to take fright, and run away, injuring C. Here both reason and justice require that A. should pay damages to C., and it would be against reason and justice to visit the consequences of the catastrophe upon B., who is the innocent intermediary in the causes. S., a wholesale druggist carelessly put belladonna, a deadly poison, in a package, and labeled it 'extract of dandelion,' a harmless medicine, and sent it, so labeled, into the market. After passing through the hands of several innocent persons, it

was purchased by an apothecary, and administered to the
plaintiff's wife, on the faith of the false label, injuring her.
Here the negligence of the original vendor was deemed
the proximate cause of the injury, and the plaintiff had an
action against him. It would have been manifestly unjust
to visit the consequences of the mistake upon the last
apothecary selling the substance, since he had acted inno-
cently, and without negligence. His act, though nearest in
point of time, was not nearest in the line of causation. So,
where a fire is negligently set out, and travels without in-
terruption to the property of plaintiff, destroying it, the
original negligence of setting it out is deemed in law the
proximate cause of the plaintiff's damage, although the
immediate cause may have been back fires ineffectually set
to arrest the main fire, the same being swallowed up in
its advance. So, where a father, mother, and son were
crossing a bridge, in the railing of which an opening had
been negligently left, through which the son fell into the
water beneath, and the father plunged in after him to save
him, and both were drowned, it was held that the mother
might recover damages from the State for the death of the
father; for, though the peril of the child was the nearest
procuring cause of the action of the father in point of time,
yet the negligence of the State in leaving the bridge in a
dangerous condition was the causa causans—the proximate
cause, which the law would regard. Much the same rule was
applied where the plaintiff's intestate lost his own life in
endeavoring to save the life of a child on a railroad track.
So, where the defendant had ascended in a balloon, which
descended a short distance from the place of ascent, in the
plaintiff's garden, and the defendant, being entangled and
in a perilous situation, called for help, whereupon a crowd
of people broke through plaintiff's fence into his garden,

and trod down his vegetables and flowers, it was held that, although ascending in the balloon was not an unlawful act, yet, as the defendant's descent, under the circumstances, would ordinarily draw the crowd into the garden, either from a desire to assist him or to gratify curiosity which he had excited, he was answerable in trespass for all the damages done to the garden of the plaintiff. Nevertheless, it appeared that in point of time the act of the defendant was not so near the injury as that of the crowd." Summing up the authorities, in section 59, he says: "In other words, it is not necessary to a defendant's liability after his negligence has been established, to show, in addition thereto, that the consequences of his negligence could have been foreseen by him. It is sufficient that the injuries are the natural, though not the necessary and inevitable, result of the negligent fault—such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question." To such effect, see Bish. Noncont. Law, secs. 45, 46; Davis v. Railway Co. (24 R., 135), 68 S. W., 140; 1 Sedg. Dam., secs. 128, 129. In section 131 of the latter work it is said: "Where animals sold have an infectious disease known to the seller, but not to the purchaser, which is communicated to other animals of the purchaser, the latter may recover compensation for the damage done to his other animals. The same rule applies where the defendant's sheep trespass on the plaintiff's land and communicate disease. And where the defendant's rams trespassed on the plaintiff's land, and got his ewes with lamb out of season, so that the lambs died soon after birth, the plaintiff was allowed to recover the diminution in value for the ewes for breeding and other purposes." In the Clayton case we held that Mrs. Clayton, who took the smallpox from her child, might recover damages therefor on the

ground that the purpose of the statute in forbidding the
pesthouse being put within one mile of the city boundary
was to prevent the communication of contagious diseases
to other persons from the pesthouse, and that it was the
natural result that the mother should take the disease from
the children living in the family with her. It is just as
natural, and to be as reasonably expected, that other per-
sons who were members of the family, whether temporarily
or permanently, would take the disease. If appellee had
been cooking for Mrs. Clayton, whether by day, week or
month, and while cooking there had contracted the disease,
which had been brought there from the pesthouse, plainly
such a result would be no more remote than Mrs. Clay-
ton's contracting the disease; and no sound distinction can
be made between a person who lived in the house for
twenty-four hours and one living there longer, if they both
took the smallpox while there. The guest was a member
of the family as much as the servant would be. And while
it was not to be anticipated, perhaps, that a particular per-
son would visit at this house at this time or would be en-
gaged there as a domestic, or be there for any other rea-
son, still it was to be anticipated that persons would come
there for various purposes, and the communication of the
disease from the persons living in the house to these per-
sons is a result as naturally to be expected as its communi-
cation from one member of the family to another. The
purpose of the statute is to require the persons having the
contagion of these diseases separated from the rest of the
commuunity, so as to prevent the spread of the disease. It
was a result naturally to be expected when the statute
was violated that the disease would be communicated to
the persons living in the neighborhood, and that not only
regular members of the family would take it but also those

who might, for any reason, for the time, be living with them. We therefore conclude that the damages to appellee are not too remote to be recovered for.

On the question of contributory negligence it is conceded that appellee did not know there was any smallpox at the pesthouse, and nothing was shown to justify apprehension on her part that the eruption on the little boy was of a more serious character than his mother supposed.

Judgment affirmed.

Judges DuRelle and Paynter dissent.